## DELAFIELD *vs.* PARISH.

*In the matter of proving the last Will and Testament of* HENRY PARISH, *deceased.*

WHERE, during a contest on the probate of a will, a special collector had been appointed, with directions not to institute suits without the permission of the Surrogate, and the widow of the deceased claimed certain property as gifts made to her in the life-time of her husband ;—the collector having applied for leave to test the validity of the gifts by an action at law, it was *Held*, that the permission should be granted.

In respect to the right to institute suits, a collector stands on the same footing as other administrators, and he is the judge of the propriety of his own course of action, subject only to his liability when the administration is terminated, and the accounts are settled before the Surrogate. If he fail to institute suits at the instance of parties in interest, upon the offer of sufficient indemnity against costs, he may be held accountable for the loss resulting from his refusal.

CHARLES O'CONOR, *for Daniel Parish.*
JOHN W. EDMONDS, *for Anne Parish and Martha Sherman.*
F. B. CUTTING,
W. M. EVARTS, *for Susan Parish.*

THE SURROGATE.—The special collector appointed in this case has presented an application for leave to institute a suit at law against the widow of the decedent, for the recovery of certain stocks and securities, standing in her name and claimed by her as her property, amounting in value to the sum of three hundred and eighty-two thousand dollars. The

petition alleges that most of these assets were purchased after Mr. Parish was attacked with paralysis, in July, 1849, with funds derived from his estate, and that the rest were transferred by Mrs. Parish to her own name, under an alleged power of attorney, subsequent to the same period. These facts are not denied, but by the affidavit interposed in answer to the petition, it is set up by Mrs. Parish, that the investments made in her name and the transfers under the power of attorney, " were specifically, in each instance, made by the wish and direction to that effect" of the decedent, " and so to become and be her property."

Now it is obvious that the validity of these gifts in the life-time of Mr. Parish, and after his attack in 1849, will probably involve much the same questions as those under investigation in this court on the probate of the will and codicils, and should the determination here possibly be adverse to the codicils, the claim to the gifts must afterwards be settled in another *forum.*

Under this state of facts the collector declares, that he deems it to be his duty, to collect and hold all the securities and property, which after the decedent's attack arose or were accumulated from his funds or assets, and to contest the validity of all transactions diverting the same from his estate. He accordingly asks that he be permitted to bring a suit for that purpose. I have no hesitation in saying that permission should be granted. If the codicils are valid, and the property is claimed by Mrs. Parish under *them,* then the assets should be placed in the hands of the collector, who represents the estate, and they should not be left in the control of a legatee, who has neither title nor official capacity.

If, on the other hand, there be a desire to stand by the claim to the property under the *gifts,* then there can be no legal reason why the gifts should not be tried in the appropriate tribunal for that class of actions—a court of law. The various arguments in respect to the inconveniences attending such an action, have not the slightest weight. No tribunal can ever admit the plea, from a party who sets up a claim, that it is inconvenient to try the claim.

But on the part of Mrs. Parish, it is insisted that if the codicils are sustained, the suit at law will not be necessary. That suggestion is met however, on the other side, by the reply that if the codicils are not sustained, a suit at law will be necessary. And one argument is just as good as the other, unless I can intimate which party has the better. That I certainly should not do, even if I had the means or power. The cause is but midway in progress, and it is not only the duty of the court to abstain as far as possible from forming definite opinions until after the final hearing, but also to refrain from expressions which might seem to indicate them. Without entertaining or expressing any views either as to the result of this contest, or its present position before me, I propose to grant this application, on the ground among others, that I ought not to restrain the collector from bringing such actions at law as he may deem proper ; unless I can say he is clearly wrong in his contemplated purpose,—and that I cannot say, because it involves my having and expressing an opinion on the present merits of the controversy, and its probable results.

But still further : it must not be overlooked that the collection of this estate devolves upon the special administrator, and not upon me. He is the officer appointed by the law for that express object, and he is personally responsible to all parties interested, for neglect or breach of duty. In respect to suits he stands on the same footing as all other administrators, and he is the judge of the propriety of his own course of action, subject only to his liability when the administration is terminated, and the accounts are settled before the Surrogate. If he fail to institute suits at the instance of parties in interest, upon the offer of sufficient indemnity against costs, he may be held accountable for the loss resulting from his refusal. The authority he receives consists in " special letters of administration, authorizing the preservation and collection of the goods of the deceased," and the statute expressly declares that he shall have power " to collect the goods, chattels, personal estate and debts of the deceased,

and to secure the same at such reasonable expense as the Surrogate shall allow, and for these purposes he may maintain suits as administrator." The law therefore empowers him to bring suits "as administrator," and this too of his own motion, and without being compelled in the first place to ask the permission of the Surrogate.

It is manifest therefore, that if I had not in the order directing the appointment of a collector, restrained him from bringing actions without my consent, he might have acted in this respect at his pleasure, under the authority conferred upon him by the statute. That restraint was placed in the order, more to satisfy objections that numerous prosecutions might be instituted, than from supposition on my part that it would become a necessary check against undue exertion of official power. It simply postponed from that time to this, the question whether the collector should be prevented from testing the title to these gifts in a court of law. In now permitting him to bring the proposed suit, I give him no directions, but simply restore him to his statutory powers. I express no opinion whether the cause of action is well taken or not, nor do I suggest any advice as to his course ; but my official duty is satisfied in saying that as the claim has been advanced, I can see no reasonable ground for denying to the collector the opportunity of having it determined in the proper tribunal, if he shall be so advised. It is the statute which authorizes him to sue, and I simply let the statute have its course, in the absence of any sufficient cause for impeding it. The assertion of title by way of gift is adverse to the estate, and it presents an independent legal question entirely beyond the jurisdiction of the probate judge. It would be an unwarrantable assumption on my part, and certainly without a single precedent, to enjoin the officer who represents the estate, from appealing to a court of law to decide a purely legal title, upon any supposed reasons of inconvenience to the party in possession of the property. An order must therefore be entered allowing the collector to bring an action to test the validity of these gifts.